**COGBURN LAW OFFICES**
ANDREW L. REMPFER, ESQ.
Nevada Bar No. 8628
alr@cogburnlaw.com
JAMIE S. COGBURN, ESQ.
Nevada Bar No.: 8409
jsc@cogburnlaw.com
PAUL R.M. CULLEN, ESQ.
Nevada Bar No.: 12355
pcullen@cogburnlaw.com
2879 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
(702) 384-3616
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY LEE, an individual, on behalf of himself and all others similarly situated as referenced herein,<br><br>Plaintiff,<br><br>vs.<br><br>NAVY FEDERAL CREDIT UNION, a foreign corporation; DOES I through V, inclusive; and ROE corporations I through V, inclusive,<br><br>Defendants. | Case No.:<br><br><br>**COMPLAINT** |

### COMPLAINT

Plaintiff, ANTHONY LEE ("Plaintiffs"), on behalf of himself and all others similarly situated, by and through the law firm of Cogburn Law Offices, hereby alleges and complains against NAVY FEDERAL CREDIT UNION, ("Defendant" or "NFCU") as follows:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343(3) as the controversy arises under the laws of the United States. Specifically, the claims arise under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et. seq. (FLSA).

2. Venue is proper in the District of Nevada (and its unofficial Southern District) because NFCU is a foreign-based corporation duly authorized to conduct business in Nevada and has been conducting business in Nevada.

**THE PARTIES**

3. Lee is a non-exempt employee, *i.e.*, he is supposed to earn overtime compensation for hours worked in excess of 40 hours per week.

4. NFCU is a federal credit union.

5. NFCU's principal place of business is 820 Follin Lane, Vienna, Virginia 22180.

6. Defendant operates bank branches in Nevada, including in North Las Vegas, Nevada.

7. At all times herein, NFCU was Lee's "employer" within the meaning of the FLSA. Defendant is thus subject to the FLSA.

8. Lee is, and was at all relevant times, a resident of Clark County, Nevada.

9. The true names and capacities whether individual, corporate, associate or otherwise of Defendants named herein as DOES I through V, inclusive, and ROE CORPORATIONS I through V, inclusive are unknown to Plaintiff. Said DOE and ROE Defendants are responsible for damages suffered by Plaintiff. Therefore, Plaintiffs sue said Defendants by such fictitious names. Plaintiff will ask leave to amend this Complaint to show the true names and capacities of each DOE and ROE Defendants at such time as the same has been ascertained.

**NFCU'S POLICY/PRACTICE/SCHEME OF REQUIRING "OFF-THE-CLOCK" WORK & ITS REFUSAL TO KEEP ACCURATE TIME RECORDS**

10. Lee has worked for NFCU as a "Member Services Representative" ("MSR") for nearly six years.

11. NFCU's job description for MSR's states the position is "non-exempt" from overtime.

12. Lee alleges for himself, and others similarly situated, NFCU maintained a uniform corporate policy that forced non-exempt employees to work "off-the-clock" both before and after their shifts.

13. On average, Lee, and all others similarly situated, worked 30-45 minutes "off the clock", per shift.

*Lee's Opening, Uncompensated Off-the-Clock Work*

14. Lee is generally scheduled to work 9:30 A.M. through 6 P.M., Monday through Friday. He would also work 1 weekend shift per month. The weekend shift was scheduled for 9:30 A.M. to 1:30 P.M.

15. In practice, however, Lee would start working at 8:45 A.M., Monday through Friday. The same was true for his once-per-month weekend shift. His time sheets state he started working at 9:30 A.M., however. That is inaccurate.

16. Lee performed about 45 minutes of work opening the branch "off-the-clock" each day.

17. NFCU did not compensate Lee for the approximate 45 minutes of "off-the-clock" work he performed opening the branch.

*Lee's Closing, Uncompensated Off-the-Clock Work*

18. NFCU failed to compensate Lee for "off-the-clock" work he performed closing the branch, as well.

19. The branch was scheduled to close at 6 P.M., Monday through Friday. It would close at 1:30 P.M. on Saturdays. His time sheets state he ended working at 6 P.M., or 1:30 P.M for the weekend shift. That is inaccurate.

20. In practice, Lee performed about 10 minutes of work closing the branch each day he worked.

21. NFCU did not compensate Lee for the approximate 10 minutes of work he performed closing the branch.

***Lee's Complaint About Time Card Fraud Which NFCU Ignored***

22. NFCU failed to record and maintain time records of the hours worked as required by law, including 29 C.F.R. § 516.2.

23. ***In fact, Lee complained to NFCU management (his ex-manager who called Lee the "N" word) in March 2012 it failed to keep accurate time records.***

24. ***Lee made this complaint to his now ex-manager, who called Lee the "N" word on several occasions.***

25. ***In response to Lee's complaint NFCU management told Lee to stop placing "comments" on his time sheets that showed his actual, accurate time worked.***

26. NFCU's practices violated and continue to violate the FLSA. The collective action claims are for overtime compensation, liquidated damages, and/or interest, and attorneys' fees and costs, under the FLSA, 29 U.S.C. §§ 207 and 216(b).

27. NFCU willfully committed, ordered, directed, supervised, allowed, planned, ratified, concealed, organized, or otherwise participated in the unlawful acts described.

28. By filing this Complaint, Lee consents to sue with respect to each FLSA claim for relief against NFCU pursuant to § 216(b) of the FLSA. Lee hereby seeks relief under that provision. Hundreds of other similarly situated non-exempt employees may elect to join this collective action if given proper notice of the pendency of the action and an opportunity to participate by "opting in". Consents to Sue on behalf of additional FLSA Collective Members may be filed as this litigation progresses.

**NFCU's COMPANY WIDE POLICIES/PRACTICES/SCHEMES REQUIRING OFF-THE-CLOCK WORK**

29. Upon information and belief, NFCU time-and-attendance policies requiring MSR's like Lee to work "off-the-clock" are based on a common practice, policy or scheme that resulted in all non-exempt MSR's at all of its branches to work off-the-clock.

30. NFCU's violations of the FLSA were intentional because Lee complained about these off-the-clock practices many times over the years. NFCU failed to remedy the violations. In fact, NFCU forced Lee to record inaccurate time.

31. This problem – working off-the-clock – has and still occurs at NFCU's branches.

32. Upon information and belief, requiring MSR's to work "off-the-clock" is part of a company-wide practice to deter overtime and thus decrease all of its non-exempt employees' compensation throughout the United States.

**THE CLASS OF MSR'S WHO REQUIRED TO WORK "OFF-THE-CLOCK"**

33. *Based on the preceding, Lee believe the class is defined as follows: all Member Services Representatives who performed any uncompensated "off-the-clock" work for NFCU in the three years immediately preceding the date Lee filed this Complaint.*

34. NFCU's conduct was intentional, purposefully designed to deprive Lee, and all others similarly situated overtime wages owed.

35. Questions of law and fact common to the FLSA Collective Members as a whole include, but are not limited to, the following:

a. Whether NFCU unlawfully failed, and continues to fail to pay, overtime compensation to MSR's in violation of the FLSA;

b. Whether NFCU's failure to pay overtime to its non-exempt FLSA Collective Plaintiffs was willful within the meaning of the FLSA;

c. Whether NFCU failed, and continues to fail, to maintain accurate records of actual time worked by the FLSA Collective Members and prospective FLSA Collective Members;

36. Lee and FLSA Collective Members are similarly situated, have substantially similar job requirements, and pay provisions, and are subject to NFCU's common practice, policy or plan of refusing to pay overtime in violation of the FLSA and/or requiring employees to work-off-the-clock *and are subject to NFCU's time-and-attendance policies regarding "off-the-clock" deprives Lee, and others similarly situated, compensation for time worked.*

37. Lee's FLSA claims may be brought and maintained as an "opt-in" collective action pursuant to § 216(b) of the FLSA, for all claims asserted by Lee and the FLSA Collective Members (FLSA claims) because the claims of the Lee are similar to the claims of the members of the prospective FLSA Collective Members.

38. While the exact number of FLSA Collective Members is unknown to Lee at the present, based on information and belief, there are more than **500** such members. Thus, a collective action is the most efficient mechanism for resolution of the FLSA Collective Members' claims.

39. The FLSA Collective Members, on behalf of whom Lee bring this "opt-in" action, are similarly situated because they have been or are employed in similar positions and were subject to the similar unlawful practices as the individually-named Plaintiff. The number and identify of other Plaintiffs yet to opt-in and consent to be a Plaintiff may be determined from NFCU's records. Potential Plaintiffs may be notified of the pendency of this action utilizing NFCU's payroll records.

40. At all times during the FLSA Collective Period, all of the FLSA Collective Members were employed in the same or similar job as Lee and were paid in the same manner and under the same standard employment procedures and practices as Lee.

41. During the FLSA Collective Period, NFCU was fully aware that Lee and FLSA Collective Members were working uncompensated overtime.

42. NFCU's violations of the FLSA, § 207, were repeated, intentional and willful.

43. Lee and FLSA Collective Members have been damaged by NFCU's FLSA §207 violations.

44. Pursuant to §§ 207(a) and 216(b), NFCU is liable to Lee and the FLSA Collective Members for the full amount of all their unpaid wages, including overtime, plus an additional equal amount as liquidated damages, plus the attorneys' fees and costs Lee incurs and FLSA Collective Members who affirmatively "opt-in" to this collective action incur.

45. In addition, an action under § 216(b) is superior to other available methods for the fair and efficient adjudication of this controversy since the damages suffered by the individual members of the FLSA Collective Action may be relatively small, and the expense and burden of the individual redress would make it impossible for such FLSA Collective Members to individually redress the harms.

46. Moreover, because of the similarity of the FLSA Collective Members' claims, individual actions would present the risk of inconsistent adjudications, subjecting both employees and NFCU to incomparable standards of conduct.

### FIRST CLAIM FOR RELIEF
**(Violation of the Fair Labor Standards Act – Wages on Behalf of Lee, *And All Others Similarly Situated*)**

47. Lee repeats and realleges each paragraph above as if set forth fully herein.

48. Lee consents to sue in this action pursuant to § 216(b) of the FLSA. Additional potential FLSA Collective Members may execute and file forms consenting to "opt-in" and joining as Plaintiffs in this collective action.

49. This claim arises from NFCU's violation of the FLSA, 29 U.S.C. § 201, et seq., for its failure to pay overtime wages to Lee and all others similarly situated for all time worked in excess of forty (40) hours in individual work weeks.

50. At all times material hereto, Lee was employed by NFCU as an "employee" within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

51. MSR's were all subject to NFCU's time-and-attendance policy requiring them to work "off-the-clock".

52. Lee, and all others similarly situated, were not compensated for their "off-the-clock" work.

53. ***NFCU has a nationwide policy, program or practice requirining MSR's to work "off-the-clock".***

54. At all times relevant, Lee and all others similarly situated, were employed by NFCU in non-exempt positions entitled 1.5 times their regularly rate in overtime wages for all hours worked over 40 in a week pursuant to 29 U.S.C. § 207.

55. Lee, and all others similarly situated, were subject to a company-wide policy that purposefully, or alternatively negligently, deprived them overtime wages for at least the past three years for off-the-clock work performed that benefited NFCU.

56. On average, Lee, and all others similarly situated, have worked 45 minutes of overtime per day for NFCU.

57. NFCU did not compensate Lee and those similarly situated at a rate of 1.5 times his regularly hourly rate of pay for all time worked in excess of forty (40) hours in individual workweeks, as required by the FLSA.

58. NFCU's refusal and failure to pay lawful wages, including overtime wages, to Lee and those similarly situated for all time worked in excess of forty (40) hours per week violated 29 U.S.C. § 207. Lee herein attaches a proposed 216(b) joinder notice for all others similarly situated. **Exhibit 1** is the proposed joinder.

59. NFCU willfully violated the FLSA.

60. Per the FLSA, Lee, and those similarly situated, seek all available damages including but not limited to wages, liquidated damages, attorneys' fees, punitive damages and costs.

61. Lee, on his behalf and for all others similarly situated who consent to join this action, seeks: a judgment for unpaid overtime wages, unpaid minimum wages (if any), and additional liquidated damages of 100% of any unpaid minimum (if any) and/or overtime wages, with such sums to be determined on an accounting of the hours worked by, and wages actually paid to, the named Plaintiffs and any such other person who consent to join this action.

62. Lee, on his behalf and for all others similarly situated who consent in to join this action, also seek an award of attorneys' fees, interest and costs as provided for by the FLSA, as well as punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Lee pray for judgment against NFCU as follows:

1. Designation of this action as a collective action on behalf of the proposed FLSA Collective Members asserting FLSA claims and prompt issuance of the notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Opt-In action, apprizing them of the pendency of this action, and permitting them to timely assert FLSA claim in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and a tolling of the statute of limitations on the FLSA Collective Action Members' claims until the FLSA Collective

Members are provided with a reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt-in as Plaintiffs;

2. Designation of Plaintiff Lee as class representative of the Nationwide FLSA Collective Members;

3. A declaratory judgment that the practices complained of are unlawful under the FLSA, §§201 et. seq.;

4. An injunction against NFCU and its officers, agents, successors, employees, representatives and any and all other persons acting in concert with it, from engaging in each of the unlawful acts, policies, practices, etc., set forth herein;

5. An award of damages, including liquidated and exemplary damages and waiting time penalties and other statutory penalties;

6. Costs of this action, including reasonable attorneys' fees and expert fees;

7. Pre-Judgment and post-Judgment interest as provided by law;

8. Such other and further legal and equitable relief as this Court may deem necessary, just and proper

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States Constitution, Lee hereby demands a jury trial.

Dated this 27th day of May 2014.

Respectfully Submitted By:

**COGBURN LAW OFFICES**

By: /s/ Andrew L. Rempfer, Esq.
ANDREW L. REMPFER, ESQ.
JAMIE S. COGBURN, ESQ.
PAUL R.M. CULLEN, ESQ.
*Attorneys for Plaintiff*